

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FIVE**

| | |
|---|---|
| MARY CALLANAN, ET AL., | ) No. ED108140 |
| | ) |
| Appellant, | ) Appeal from the Circuit Court of |
| | ) the City of St. Louis |
| vs. | ) |
| | ) Honorable Michael F. Stelzer |
| A.W. CHESTERTON, ET AL., | ) |
| | ) |
| Respondent. | ) Filed: March 31, 2020 |

### Introduction

Mary Callanan and Kelley Miller ("Plaintiffs") filed a petition on behalf of Ronald Callanan ("Callanan") against Cleaver-Brooks, Inc. ("Cleaver-Brooks"), among other defendants, for strict liability, negligence, and willful and wanton misconduct based on alleged asbestos-containing products manufactured and sold by Cleaver-Brooks. The circuit court granted Cleaver-Brooks summary judgment finding the record "devoid of any evidence" of causation. Plaintiffs appeal the grant of summary judgment arguing there is a genuine dispute of material fact over Callanan's exposure to asbestos caused by a Cleaver-Brooks product. Cleaver-Brooks responds Plaintiffs failed to present a genuine dispute for the exposure requirement or for "substantial factor" causation, required for the product liability claims. We find the circuit court erred granting summary judgment because the record showed a genuine dispute of material fact from which a jury could infer Callanan was exposed to asbestos due to

Cleaver-Brooks products, which caused or contributed to cause his asbestosis and death. We reverse the judgment and remand for further proceedings.

Procedural Background

Plaintiffs filed a second amended petition ("Petition") on November 30, 2017. In the Petition, Plaintiffs alleged products manufactured, sold, distributed, or utilized by Cleaver-Brooks contained and exposed Callanan to asbestos. Plaintiffs alleged Cleaver-Brooks was liable under a theory of strict liability for Callanan's exposure to asbestos from Cleaver-Brooks products causing Callanan "to develop asbestosis during his work in the City of St. Louis, Missouri, which ultimately led to his death on September 27, 2016." Plaintiffs also alleged Cleaver-Brooks was negligent because Callanan was exposed to asbestos "causing him to develop asbestosis, which ultimately led to his death on September 27, 2016."

Cleaver-Brooks filed a motion for summary judgment ("Motion for Summary Judgment") on April 8, 2019. In support of the Motion for Summary Judgment, Cleaver-Brooks filed a memorandum of law and a statement of uncontroverted material facts. Cleaver-Brooks argued Plaintiffs failed to establish Cleaver-Brooks owed a duty of care to Callanan and failed to prove any product sold, distributed, manufactured, or supplied by Cleaver-Brooks was the cause of Callanan's disease or a substantial factor in his death.

On May 7, 2019, Plaintiffs filed a response to Cleaver-Brooks' statement of uncontroverted material facts and a memorandum in opposition to the Motion for Summary Judgment containing a statement of additional material facts. Plaintiffs argued Cleaver-Brooks failed to consider circumstantial evidence from which a jury could infer Callanan was exposed to Cleaver-Brooks products containing asbestos. Plaintiffs also argued Cleaver-Brooks owed Callanan a duty of care as a foreseeable user of the products in question.

2

On May 22, 2019, Cleaver-Brooks filed a response to Plaintiffs' statement of facts.[1] On May 29, 2019, Cleaver-Brooks filed a reply in support of the Motion for Summary Judgment and a supplemental statement of facts. Plaintiffs did not respond to Cleaver-Brooks' supplemental statement of facts.

The circuit court entered summary judgment for Cleaver-Brooks on August 1, 2019. The circuit court found "[t]he record [was] entirely devoid of any evidence of exposure by [Callanan] to Cleaver-Brooks' asbestos-containing products prior to or including 1983."

This appeal followed.

Factual Background

The factual background includes testimony and statements of material facts from the summary judgment record to the extent they were admitted or conceded by the parties. See Rule 74.04.

Callanan worked with David Wolfe at FM Engineering as a field inspector for approximately five years beginning around 1973.[2] Wolfe and Callanan had the same job responsibilities for inspecting boilers but worked independently from each other. Wolfe believed they inspected "hundreds" of locations per year when they worked in the same job. Wolfe estimated 20-30% of the inspections involved inspecting boilers. Wolfe remembered inspecting Cleaver-Brooks boilers during the five years he worked at FM Engineering. Wolfe knew Callanan also inspected Cleaver-Brooks boilers because Cleaver-Brooks was one of the top manufacturers in the area.

Wolfe and Callanan could not work "hands-on" with any Cleaver-Brooks boilers. Inspection of the boilers was a "one-person" job, so Wolfe did not recall inspecting a Cleaver-

---

[1] Cleaver-Brooks also moved to strike the Factual and Procedural Background section of Plaintiffs' response to the Motion for Summary Judgment for violating Rule 74.04(c)(2).

[2] David Wolfe was deposed on September 27, 2018.

Brooks boiler with Callanan. Because Wolfe and Callanan did the same job but Wolfe did not see Callanan working, Wolfe did not witness Callanan being exposed to asbestos from a Cleaver-Brooks boiler. Wolfe was present when old refractory material was ripped off of Cleaver-Brooks boilers and replaced, which created dust in the air.[3] This caused Wolfe to inhale the dust. Wolfe regularly performed this type of inspection of and work on the refractory material in Cleaver-Brooks boilers. The gaskets at the end of the boilers would sometimes be removed during inspections. If a scraper or hand wire brush was used, removal of the gaskets would create dust as well.

Callanan worked with Samuel Sorrels at Protection Mutual in Dallas, Texas, from February 7, 1987 until around 2005.[4] Sorrels and Callanan worked together on average 15 days every month. Sorrels believed there was a Cleaver-Brooks boiler at "just about every facility" they inspected.[5] Sorrels believed Callanan inspected 50 to 75 Cleaver-Brooks boilers each year they worked together. Callanan was primarily responsible for the boiler inspections, which consisted of internal and external examinations of boilers. Sorrels and Callanan could not touch or perform any maintenance or repairs on Cleaver-Brooks boilers.

Sorrels may have seen Callanan during the removal of one or two Cleaver-Brooks boilers. The removal process of the boiler included looking at the boiler and making sure precautions were in place. Sorrels believed they were exposed to insulation in the Cleaver-Brooks boilers, which contained asbestos.

Sorrels was with Callanan when external gaskets were removed from pipes connecting to a Cleaver-Brooks boiler and when refractory material was replaced on Cleaver-Brooks boilers.

---

[3] Cleaver-Brooks argues the way Plaintiffs presented Wolfe's testimony about the refractory material and gaskets was misleading and speculative.

[4] Samuel Sorrels was deposed on March 14, 2019.

[5] Sorrels deferred to the boiler records from the facilities.

4

They were trained to presume the gaskets and refractory material contained asbestos. Sorrels was not certain the Cleaver-Brooks boilers he worked on were in original condition, but "based on the age" of the boilers and associated materials, Sorrels believed the Cleaver-Brooks boilers were normally in original condition.

Callanan died on September 27, 2016. Callanan experienced a decline in health in 2016 leading up to his death. Callanan's cause of death was identified as asbestosis. The autopsy report also identified heart disease. Callanan suffered from chronic obstructive pulmonary disease and other medical issues. Callanan was not deposed.

Plaintiffs retained Dr. Carl Andrew Brodkin as an expert.[6] According to Dr. Brodkin's testimony, some Cleaver-Brooks boilers contained asbestos. Dr. Brodkin found the Cleaver-Brooks boilers discussed by Sorrels may have contained asbestos during the time period Sorrels and Callanan worked on them. Based on Wolfe's testimony alone, Dr. Brodkin's opinion was Callanan was "very likely exposed to asbestos from a Cleaver-Brooks boiler." Dr. Brodkin also found the diagnosis of asbestosis was causally related to this occupational exposure. Dr. Brodkin also found Cleaver-Brooks boilers Callanan would have worked on in and around the 1980's likely contained asbestos, but Dr. Brodkin could not point to a specific boiler at a specific location which exposed Callanan to asbestos.

Cleaver-Brooks conceded its equipment contained asbestos board; cement; gaskets; rope; packing; and insulating material. These components of Cleaver-Brooks boilers, at times, contained asbestos.

---

[6] Dr. Brodkin was deposed on April 5, 2019. Cleaver-Brooks reserved the right to present competing expert testimony but did not do so in the summary judgment record.

Discussion

In its judgment, the circuit court claimed the record was "devoid of evidence" of causation. On appeal, Plaintiffs claim inferences from the evidence in the summary judgment record would have allowed a jury to find Callanan was exposed to asbestos from boilers manufactured and sold by Cleaver-Brooks. Cleaver-Brooks argues Plaintiffs failed to show Callanan was exposed to asbestos from any specific Cleaver-Brooks product and failed to show any Cleaver-Brooks product was a "substantial factor" in causing Callanan's death.

The circuit court ignored circumstantial evidence from which a jury could have reasonably inferred Callanan was exposed to asbestos from his extended periods of work around Cleaver-Brooks products. Based on the summary judgment record and the arguments before us on appeal, Cleaver-Brooks has failed to negate the genuine disputes of material facts asserted by Plaintiffs related to causation, so Cleaver-Brooks is not entitled to summary judgment.

*Limitation of Allegations in the Petition*

As a preliminary issue, Cleaver-Brooks claims the Petition limited Plaintiffs claim to exposure before 1983. "The purpose of pleadings is to present, define, and isolate the issues, so that the trial court and all parties have notice of the issues." *The Medve Grp. v. Sombright*, 163 S.W.3d 453, 456 (Mo. App. E.D. 2005) (internal quotation omitted). Paragraph 5 of the Petition reads:

> From 1970 through 1983, [Callanan] worked as a boiler inspector in St. Louis, Missouri for FM Global. He had to crawl through boilers to ensure they were functioning properly and OSHA compliant.

Cleaver-Brooks cites *Sombright* to argue the claims against Cleaver-Brooks in the Petition should, therefore, be limited to exposure before 1983. We disagree. Based on the motion for summary judgment, the parties' statements of facts, and the briefs on appeal, it is clear Cleaver-

Brooks had notice Callanan was claiming exposure to Cleaver-Brooks products before and after 1983. Cleaver-Brooks attached the deposition of Samuel Sorrels, Callanan's co-worker after 1983, as an exhibit to the Motion for Summary Judgment and admitted facts from the deposition. *Sombright* protects parties from unfair prejudice when a claim not raised by the pleadings is raised ***at trial***. *Id*. at 457. This case is in the summary judgment stage. Because Cleaver-Brooks was made aware of the alleged extent of the exposure before trial, we find Plaintiffs claims were not limited to exposure before 1983. *Id.* at 456.

*Standard of Review*

In determining whether a trial court has properly granted summary judgment, we review the matter essentially *de novo*. *Bergstrom v. Welco Mfg. Co.*, 487 S.W.3d 5, 7 (Mo. App. E.D. 2015) (internal citations omitted). To establish a right to summary judgment, a defending party must show: (1) facts negating one of the required elements of the plaintiff's claim or claims, (2) the plaintiff, after an adequate period of discovery, has not been and will not be able to produce evidence sufficient to allow a trier of fact to find the existence of one of the elements, or (3) there is no genuine dispute as to the existence of the facts necessary to support the respondent's properly-pleaded affirmative defense. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993).

We review the record in the light most favorable to the non-movant. *Id*. at 382. We accord the non-movant the "benefit of all reasonable inferences." *Id*. Therefore, if the movant requires an inference from the evidence to establish the right to judgment as a matter of law and the evidence reasonably supports ***any*** other inference, then a genuine dispute exists and the movant is not entitled to summary judgment. *Id.* Summary judgment tests for the existence, not the extent, of these genuine disputes. *Id*. at 378. If a genuine dispute is shown for the material

7

fact on which a movant has based a motion for summary judgment, summary judgment is not proper. *Bergstrom*, 487 S.W.3d at 9 (citing *Sundermeyer*, 271 S.W.3d at 554).

We exercise caution in affirming summary judgment because it is an extreme and drastic measure cutting off a party's right to its "day in court." *Id*. at 7-8 (internal citations omitted).

*Analysis*[7]

Plaintiffs argue inferences from the evidence would allow a jury to find Callanan was exposed to asbestos by working near Cleaver-Brooks boilers and that experience caused or contributed to cause Callanan's asbestosis. Cleaver-Brooks responds Plaintiffs failed to present any evidence showing which specific Cleaver-Brooks product exposed Callanan to asbestos before 1983 and failed to show a specific Cleaver-Brooks product was a "substantial factor" in causing Callanan's death.

This appeal is limited to the issue of causation. To withstand summary judgment, Plaintiffs must demonstrate there is a genuine issue of material fact. *See Bergstrom*, 487 S.W.3d at 9. "To establish actual causation in Missouri, the conduct of the defendant must be a 'substantial factor' in causing the injury." *Poage v. Crane Co.*, 523 S.W.3d 496, 509 (Mo. App. E.D. 2017) (internal citations omitted). "Cause in fact" analysis is customarily a question of fact reserved for the jury. *Id*. at 508 (citing *Wagner v. Bondex Int'l, Inc.*, 368 S.W.3d 340, 351 (Mo. App. W.D. 2012)). In Missouri, a "defendant's conduct must 'directly cause' or 'directly contribute to cause' [a] plaintiff's injury" to establish cause in fact. *Poage*, 523 S.W.3d at 508 (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993)).

---

[7] Cleaver-Brooks argues Plaintiffs failed to comply with Rule 84.04(d). We disagree. We find Plaintiffs' point relied on meets the requirements under Rule 84.04(d) by: stating the trial court ruling, grant of summary judgment; stating the legal basis, a genuine issue of fact about exposure to asbestos; and explaining the legal reason in summary fashion, evidence to support a jury inference of causation. We review this appeal on the merits.

Exposure

In an asbestos case against a product manufacturer, a plaintiff must show exposure to the asbestos-containing product to establish cause in fact. *Id*. at 510. Exposure can be shown by circumstantial evidence. *Id*. In *Poage*, a product-manufacturer, Crane Co., acknowledged the ship Poage worked on for four years contained Crane Co. valves. *Id*.[8] Evidence was presented to show Crane Co. sold many asbestos-containing valves and gaskets and such products were installed on the ship. *Id*. In *Poage*, no witness could recall a specific time they saw Poage work with Crane Co. valves. *Id*. One of Poage's co-workers, Chris Thompson, testified to working close to Poage for four years. *Id*. Thompson worked on every valve in the engine room of the ship. *Id*. Thompson testified Poage would have also worked on Crane Co. valves because Poage did everything Thompson did. *Id*. The court held this was sufficient evidence to show Poage was exposed to asbestos from Crane Co. valves. *Id*.

In response to Plaintiffs' statement of facts, Cleaver-Brooks admitted: Wolfe had the same job responsibilities as Callanan; Wolfe would be exposed to dust from Cleaver-Brooks boilers in numerous aspects of his job; Wolfe knew Callanan also inspected Cleaver-Brooks boilers because of their similar job responsibilities and because Cleaver-Brooks was one of the top manufacturers of boilers in the region; Sorrels saw Callanan inspect 50 to 75 Cleaver-Brooks boilers per year; Sorrels saw Callanan work very closely to the refractory materials of a Cleaver-Brooks boiler; Sorrels was trained to presume refractory material contained asbestos; and Cleaver-Brooks admitted their boilers contained components which, at times, contained asbestos.

Like in *Poage*, Wolfe had the same job as Callanan with the same responsibilities for five years. Wolfe regularly worked in and around Cleaver-Brooks boilers. Wolfe was confident Callanan would have worked on Cleaver-Brooks boilers because Cleaver-Brooks was a top

---

[8] Poage suffered from mesothelioma, not asbestosis.

9

manufacturer at the time Wolfe worked with Callanan. Unlike in *Poage*, Sorrels specifically saw Callanan regularly work around Cleaver-Brooks boilers. Sorrels worked with Callanan from 1987 to 2006 and estimated Callanan would have inspected 50 to 75 Cleaver-Brooks boilers per year. These facts allow a jury to infer Callanan was exposed to asbestos-containing Cleaver-Brooks products while working with Wolfe and Sorrels. Cleaver-Brooks admitted these facts. Based on these facts and admissions, we find Plaintiffs showed evidence from which a jury could infer Callanan was exposed to asbestos-containing Cleaver-Brooks boilers during his career. Plaintiffs receive the benefit of all reasonable inferences; a movant cannot rely on one possible inference of many to be entitled to summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

Despite the admissions, Cleaver-Brooks claims Plaintiffs have failed to identify a specific product manufactured by Cleaver-Brooks which exposed Callanan to asbestos. Cleaver-Brooks relies on *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984). However, Cleaver-Brooks' reliance on *Zafft* and *Benjamin Moore* is misplaced.[9] *Zafft* requires a causal connection between a defendant and the injury-causing product. *Id*. at 247. In *Zafft*, no witnesses were able to identify which company manufactured the particular injury-causing products. *Id*. at 246.

Here, Wolfe provided circumstantial evidence similar to the evidence in *Poage* to show Callanan would have come into contact with dust from Cleaver-Brooks boilers on the job. Sorrels also provided direct evidence Callanan was exposed to refractory material from Cleaver-Brooks boilers. Cleaver-Brooks admitted producing boilers which, at times, contained asbestos. Unlike in *Zafft*, the witnesses in this case have provided evidence—both direct and

---

[9] Cleaver-Brooks also relies on the *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110 (Mo. banc 2007) case which restates the ruling in *Zafft* in the context of a nuisance case.

circumstantial—identifying Cleaver-Brooks boilers as one of the boilers which Callanan would have inspected. There is no *Zafft* product identification issue in this case.

Expert testimony is not required for a jury to infer exposure from witness testimony. *Poage*, 523 S.W.3d at 510 (citing *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 511 (Mo. App. E.D. 2007)). But Plaintiffs also presented expert testimony supporting the inference Cleaver-Brooks boilers exposed Callanan to asbestos which caused or contributed to cause his asbestosis and death. Dr. Brodkin explained Cleaver Brooks had asbestos-containing components in some of its boilers, so some of the Cleaver-Brooks boilers Callanan inspected "likely contained asbestos." Dr. Brodkin testified, because Callanan was inspecting boilers in the 1970's and 1980's, Callanan was "very likely" exposed to asbestos when in or around a Cleaver-Brooks boiler during disruption of components and material. Dr. Brodkin testified Cleaver-Brooks made gasket seals for the front and rear doors of the boiler, refractory materials, and jacket insulation, all of which contained asbestos.

In response to Plaintiffs statement of material facts, Cleaver-Brooks denied but failed to refute Dr. Brodkin's opinion Callanan was "very likely" exposed to asbestos from a Cleaver-Brooks boiler. Cleaver-Brooks admitted this was a portion of Dr. Brodkin's testimony. Cleaver-Brooks argued Dr. Brodkin did not have a basis for this opinion because Wolfe could not testify from personal experience seeing Callanan work on a Cleaver-Brooks boiler. Plaintiffs rely on circumstantial evidence presented by Wolfe, Sorrels, and Dr. Brodkin. If evidence can reasonably support an inference contrary to a necessary portion of a movant's summary judgment argument, then a genuine dispute exists and the movant is not entitled to summary judgment. *ITT Commercial Finance Corp.*, 854 S.W.2d at 382. The evidence presented by Plaintiffs allows for an inference which creates a genuine dispute as to a material fact on

11

exposure. Therefore, Cleaver-Brooks is not entitled to summary judgment on the issue of exposure.

Substantial Factor

Cleaver-Brooks also claims summary judgment is proper because Plaintiffs have failed to show a specific Cleaver-Brooks product was a substantial factor in causing Callanan's asbestosis. We find Plaintiffs presented evidence establishing a genuine dispute as to whether Cleaver-Brooks' products were a "substantial factor" in causing Callanan's death. Conduct is a "substantial factor" when it would be "sufficient in and of itself to cause the injury," even if the alleged injury would have occurred due to others' independent conduct. *Poage*, 523 S.W.3d at 509 (internal quotations omitted). "Missouri has not expressly defined how to apply the 'substantial factor' test in asbestos cases." *Id.* (citing *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 992 (8th Cir. 1998) and *Wagner*, 368 S.W.3d at 350-51). The *Poage* Court affirmed the trial court's judgment finding submissible evidence for a jury to find a "substantial factor" but declined to decide if Missouri should adopt the "frequency, regularity, and proximity" test for asbestos cases. *Id.* (citing *Wagner*, 368 S.W.3d at 350-51).

The "frequency, regularity, and proximity" test has been adopted by "a majority of courts" to apply the "substantial factor" test. *Chism*, 158 F.3d at 992. The test looks at four factors: "(1) exposure to a particular product; (2) the frequency of the exposure; (3) the duration of the exposure; and (4) how closely the plaintiff worked with the asbestos-containing product." *Poage*, 523 S.W.3d at 509 (citing *Chism*, 158 F.3d at 992). Without adopting this test for asbestos cases in Missouri, the *Poage* Court found "frequent exposure, lengthier exposure, and being in close proximity to asbestos dust" increases the likelihood a product was a "substantial factor" in causing an asbestos-related disease. *Id.*

12

Like in *Poage* and *Wagner*, it is not necessary for us to adopt a specific "substantial factor" test because there is clearly relevant evidence which the trial court overlooked in granting summary judgment. As stated above in the exposure analysis, Cleaver-Brooks admitted its products, at times, contained asbestos allowing for the inference of exposure and causation. Cleaver-Brooks admitted Wolfe's and Sorrels' testimonies. Cleaver-Brooks failed to refute the testimony of Plaintiffs' expert, Dr. Brodkin, that the Cleaver-Brooks boilers Callanan worked on likely contained asbestos and Callanan was "very likely" exposed to asbestos from his work in and around these boilers. Cleaver-Brooks did not refute Dr. Brodkin's claim occupational exposure caused Callanan's asbestosis. Based on the admissions in the summary judgment record and a lack of evidence refuting the above claims, the summary judgment record contains genuine disputes which would allow a jury to infer Cleaver-Brooks products were a "substantial factor" in causing or contributing to cause Callanan's asbestosis and eventual death.

## Conclusion

Plaintiffs have shown the summary judgment record presents a genuine dispute to be decided by a jury as to the material facts involved in causation, both for the issue of exposure and "substantial factor" analysis. The judgment of the circuit court is reversed, and this case is remanded for further proceedings consistent with this opinion.

_____
Philip M. Hess, Judge

Colleen Dolan, C.J. and
Sherri B. Sullivan, J. concur.